UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

TRUSTEES OF THE NEW YORK CITY          :
DISTRICT COUNCIL OF CARPENTERS
PENSION FUND, WELFARE FUND,            :
ANNUITY FUND AND APPRENTICESHIP,
JOURNEYMAN RETRAINING,                 :       14 Civ. 9502 (JGK)(HBP)
EDUCATIONAL AND INDUSTRY FUND,
TRUSTEES OF THE NEW YORK CITY          :       REPORT AND
CARPENTERS RELIEF AND CHARITY                  RECOMMENDATION
FUND, THE NEW YORK CITY AND            :
VICINITY CARPENTERS LABOR-
MANAGEMENT CORPORATION, and            :
THE NEW YORK CITY DISTRICT
COUNCIL CARPENTERS,                    :

                         Plaintiffs,  :

        -against-                      :

DEPENDABLE OFFICE INSTALLATION         :
LLC,
                                       :
                         Defendant.
                                       :
----------------------------------X


        PITMAN, United States Magistrate Judge:


        TO THE HONORABLE JOHN G. KOELTL, United States District

Judge,


I.  Introduction


        Plaintiffs, employer and employee trustees of multi-

employer labor-management trust funds, the trustees of a charita-

ble organization and a labor organization that represents employ-

ees and a not-for-profit corporation commenced this action to enforce an arbitration award.  The arbitration award was entered as a result of defendant's breach of a collective bargaining agreement that required defendant to make contributions to the funds and the charitable organization.  Defendant defaulted in the arbitration proceeding, and the arbitrator awarded plaintiffs a total of $1,042,943.46, comprised of unpaid contributions, interest, liquidated damages, attorneys' fees, arbitrator's fees and other items.

After being duly served with the summons and complaint, defendant failed to answer or move with respect to the complaint, and on April 2, 2015, the Honorable John G. Koeltl, United States District Judge, determined that plaintiffs were entitled to a default judgment and referred the matter to me to conduct an inquest.  Pursuant to that Order of reference, I issued an order on April 17, 2015 directing plaintiffs to make their inquest submissions by June 16, 2015 and directing defendant to submit any responsive materials by July 16, 2015.  My April 17, 2015 scheduling Order further provided:

> IF DEFENDANT (1) FAILS TO RESPOND TO PLAINTIFFS' SUB-
> MISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY July
> 16, 2015 AND REQUEST AN IN-COURT HEARING, IT IS MY
> INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERN-
> ING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN SUBMIS-
> SIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transat-
> lantic Marine Claims Agency, Inc. v. Ace Shipping

> Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v.
> ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir.
> 1989) ("[I]t [is] not necessary for the District Court
> to hold a hearing, as long as it ensured that there was
> a basis for the damages specified in a default judg-
> ment.")

(Emphasis in original.)  Although plaintiff made timely submis-

sions in accordance with my Order, defendant has not made any

submissions, nor has it contacted my chambers in any way.

Accordingly, I make the following report and recommendation on

the basis of plaintiffs' submissions alone.

An initial issue which is not addressed in plaintiffs'

submissions is whether proceeding by way of inquest is appropri-

ate.  The Court of Appeals has stated that:

> [D]efault judgments in confirmation/vacatur proceedings
> are generally inappropriate.  A motion to confirm or
> vacate an award is generally accompanied by a record,
> such as an agreement to arbitrate and the arbitration
> award decision itself, that may resolve many of the
> merits or at least command judicial deference.  When a
> court has before it such a record, rather than only the
> allegations of one party found in complaints, the
> judgment the court enters should be based on the re-
> cord.  It does not follow, of course, that the non--
> movant can simply ignore such a motion.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006);

accord 1199/SEIU United Healthcare Workers East v. South Bronx

Mental Health Council, Inc., 13 Civ. 2608 (JGK), 2014 WL 840965

at *5-*6 (S.D.N.Y. Mar. 4, 2014) (Koeltl, D.J., adopting the

Report & Recommendation of Freeman, M.J.).  The Court of Appeals

went on to conclude that unopposed actions to confirm or vacate
an arbitration award should be treated as unopposed motions for
summary judgment.  D.H. Blair & Co. v. Gottdiener, supra, 462
F.3d at 109-10; accord Trustees of the New York City Dist.
Council of Carpenters Pension Fund v. Coastal Envtl. Grp., Inc.,
16 Civ. 6004 (GHW), 2016 WL 7335672 at *3 (S.D.N.Y. Dec. 16,
2016) (Woods, D.J.); GE Transportation (Shenyang) Co. v. A-Power
Energy Generation Sys., Ltd., 15 Civ. 6194 (PAE), 2016 WL 3525358
at *4 (S.D.N.Y. June 22, 2016) (Engelmayer, D.J.); Trustees for
The Mason Tenders Dist. Council Welfare Fund v. Earth Constr.
Corp., 15 Civ. 3967 (RA), 2016 WL 1064625 at *3 (S.D.N.Y. Mar.
15, 2016) (Abrams, D.J.)

However, given defendant's default in both the arbitra-
tion proceeding and this proceeding, treating the inquest as an
uncontested motion for summary judgment has little practical
difference.  Where a defendant defaults in both the arbitration
and confirmation proceedings,

> the distinction between moving for default judgment and
> moving for summary judgment in confirmation of an
> arbitration proceeding is purely academic.  Defendant
> did not contest plaintiffs' claims during the arbitra-
> tion hearing.  Therefore, the arbitrator found defen-
> dant in default, and awarded plaintiffs damages accord-
> ingly.  For the Court's purposes, defendant never put
> forward a case in either the arbitration or judicial
> phases of this dispute. . . .  As such, a more strin-
> gent review of plaintiffs' case under the summary
> judgment standard does not improve defendant's posi-

tion; plaintiffs' claims, from the beginning, have gone uncontested.

Trs. of Unite Here Nat. Health Fund v. New Age Intimates, Inc., Nos. 07-CV-2892 (RRM)(CLP), 07-CV-2892 (RRM)(CLP), 2008 WL 3833841 at *4 (E.D.N.Y. Aug. 14, 2008); accord D.H. Blair & Co. v. Gottdiener, supra, 462 F.3d at 109 ("If the non-movant does not respond [to an action seeking confirmation of an arbitration award], its failure to contest issues not resolved by the record will weigh against it."); see Trustees of the Building Trades Annuity Fund v. Professional Plumbing of Staten Island Corp., No. CV-09-3812 (ADS)(ART), 2010 WL 6230530 at *2 (E.D.N.Y. Nov. 17, 2010); Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, United Here! v. Jung Sun Laundry Group Corp., No. 08-CV-2771 (DLI)(RLM), 2009 WL 704723 at *3 (E.D.N.Y. Mar. 16, 2009). Accordingly, the issue to be resolved here is whether, based on the uncontested submissions before me, there is a genuine issue of material fact.

Viewing the facts "in the light most favorable" to defendant, Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014), and "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of" defendant, Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012), I find that there is no genuine issue as to the facts set forth below.

In addition, after applying the law to the facts, I respectfully recommend that (1) judgment be entered in favor of plaintiffs in the amount of $1,042,943.46 with interest at the rate of 5.25% from October 28, 2014 to the present; (2) plaintiffs be awarded attorneys' fees in the amount of $8,115.00 and (3) that plaintiffs be awarded costs in the amount of $125.46.

## II. Findings of Fact

1.   Plaintiffs Trustees of the New York City District Council of Carpenters Pension, Welfare Annuity, Apprenticeship, Journeyman retraining and Educational Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust finds organized and operated in accordance with the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").  The Trustees are fiduciaries within the meaning of Section 2(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York  10014 (Declaration of Luke Powers, dated June 16, 2015 (Docket Item ("D.I.") 19) ("Powers Decl.") ¶ 3).

2.   Plaintiffs Trustees of the New York City District Council of Carpenters Relief and Charity Fund ("Charity Fund") (the ERISA Funds and the Charity Fund collectively are referred

6

to herein as the "Funds") are Trustees of a charitable organiza-
tion established under section 501(c)(3) of the Internal Revenue
Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its
principal place of business at 395 Hudson Street, New York, New
York  10014 (Powers Decl. ¶ 4).

    3.  Plaintiff the New York City District
Council Carpenters (the "Union") is a labor organization that
represents employees in an industry affecting commerce within the
meaning of section 501 of the Labor Management Relations Act
("LMRA"), 29 U.S.C. § 142, and is the certified bargaining
representative for certain employees of the Defendant (Powers
Decl. ¶ 5).

    4.  Plaintiff New York City and Vicinity Carpenters
Labor-Management Corporation is a New York not-for-profit corpo-
ration (Powers Decl. ¶ 6).

    5.  Dependable Office Installation LLC ("Dependable")
is a corporation organized under the laws of New Jersey.  Depend-
able is an employer within the meaning of Section 3(5) and 515 of
ERISA, 29 U.S.C. §§ 1002(5) and 1145, and is an employer in an
industry affecting commerce within the meaning of Sections 301
and 501 of the LMRA, 29 U.S.C. §§ 185, 142.  Dependable maintains
its principal place of business at 55 Elm Hill Road, Clifton, New
Jersey 07055 (Powers Decl. ¶ 7).

6.   On March 15, 2011, Dependable executed an Independent Building Agreement (the "CBA") with the Union (Powers Decl. ¶ 8 & Ex. A thereto).

7.   The CBA required Dependable to make specified contributions to the Funds in connection with all work performed within the trade and geographical jurisdiction of the Union (Powers Decl. ¶ 9 and Ex. A thereto at Art XV, § 1).   The contributions were based on the number of hours that workers spent performing work within the trade and geographical jurisdiction of the Union.

8.   The CBA required Dependable to submit to audits of its books and records to verify that it made all required contributions to the Funds (Powers Decl. ¶¶ 9, 10 and Ex. A thereto at Art XV, § 1).

9.   The CBA provided that "[i]t shall be a violation of this Agreement for any signatory Employer to fail to furnish proper records when requested, for the purpose of completing an audit" (Powers Decl. Ex. A at Art XV, § 1).

10.   The CBA provided that if the Funds commence proceedings before an arbitrator to collect delinquent contributions, and the arbitrator renders an award in favor of the Funds, the arbitrator shall be empowered to award such interest, liquidated damages and/or costs as may be applicable under the CBA and

8

the Declaration of Trust establishing the Funds (Powers Decl. Ex. A at Art XV, § 6).

11. If the Funds are required to institute litigation to recover delinquent contributions, the CBA provides that the Funds are entitled to recover: (1) the unpaid contributions; (2) interest from the due dates of the unpaid contributions through the date of judgment, calculated at Citibank's prime rate plus 2%; (3) liquidated damages; (4) reasonable attorneys' fees and (5) such other legal or equitable relief as the Court deems appropriate (Declaration of Christopher Ozard, dated June 15, 2015 (D.I. 20) ("Ozard Decl.") Ex. B thereto at § V).

12. The CBA further bound Dependable to the terms and conditions of the Collection Policy promulgated by the Funds (Powers Decl. Ex. A at Art XV, § 3).

13. The Collection Policy provides that if Dependable refused to make its books and records available for audit, the Funds could determine the existence and amount of a delinquency through a prescribed method (Ozard Decl. ¶ 4 & Ex. B thereto at § V, ¶ 12).

14. The Collection Policy provides that the Funds may estimate a delinquency by comparing the average of the four highest consecutive weeks to each week within the requested audit period. If Dependable's actual contributions were less than the

9

contributions that would have been due based on the average of the four highest consecutive weeks, the difference constituted a delinquency (Ozard Decl. Ex. B § IV, ¶ 12).

15. The Collection Policy further provides that "[a] determination [of estimated principal] under [the Collection Policy] shall constitute presumptive evidence of delinquency" (Ozard Decl. Ex. B § IV, ¶ 12).

16. The Funds' Collection Policy provides that the Funds are entitled to recover the costs associated with the audit in instances where a formal proceeding is necessary to collect delinquent contributions (Ozard Decl. Ex. B § IV, ¶¶ 9, 11).

17. The Funds requested that Dependable furnish its books and records to allow the Funds to conduct an audit for the period from September 29, 2011 through March 14, 2014 (Ozard Decl. ¶ 5).

18. Dependable refused to furnish its books and records to the Funds for the purpose of conducting an audit (Ozard Decl. ¶ 6; Powers Decl. ¶ 11).

19. As a result of Dependable's refusal to comply with the audit provisions of the CBA, the Funds were entitled to calculate delinquent calculations pursuant to the estimation method outlined in paragraph 14 above (Ozard Decl. ¶ 7).

20.   Christopher Ozard, Audit Department Manager of the Funds, first calculated the average of the four highest consecutive weeks of remittances in the audit period.  He then compared that average to each week in the audit period.  He subsequently provided Dependable with a credit for the number of hours for which Dependable actually made contributions.  Finally he multiplied the remaining number of hours by the applicable contribution rate to yield Dependable's estimated delinquency (Ozard Decl. ¶¶ 8-13 & Ex. C thereto).

21.   Using the estimation method, Ozard calculated that Dependable owed the Funds $809,679.57 in unpaid contributions, $161,935.91 in liquidated damages and $1,791.12 in unpaid contributions to the Promotional Fund (Ozard Decl. ¶¶ 14-16 & Ex. C thereto).

22.   To calculate the unpaid contributions for Journeyman Carpenters, Ozard first averaged the hours for the four highest consecutive weeks of remittances within the audit period. This calculation yielded an average of 148 hours (Ozard Decl. ¶ 7 & Ex. C at 3-6).  Using this average of 148 hours per week for the audit period and deducting the number of hours for which Dependable actually made contributions yielded a total of 17,620 hours for which contributions were not made (Ozard Decl. Ex. C at 3-6).  Ozard then multiplied 17,620 hours by the hourly contribu-

11

tion rate of $38.88 per hour applicable to Journeymen Carpenters
(Powers Decl. Ex. A at 31) and obtained a product of $685,065.60
representing the contributions owed to the Funds for Journeymen
Carpenters (Ozard Decl. Ex. C at 6).

23.   Ozard used the same methodology to determine the
unpaid contributions owed with respect to Apprentice Carpenters.
Ozard first averaged the hours for the four highest consecutive
weeks of remittances within the audit period.  This calculation
yielded an average of 38 hours (Ozard Decl. ¶ 7 & Ex. C at 3-6).
Using this average of 38 hours per week for the audit period and
deducting the number of hours for which Dependable actually made
contributions yielded a total of 4,769 hours for which contribu-
tions were not made (Ozard Decl. Ex. C at 3-6).  Ozard then
multiplied 4,769 hours by the hourly contribution rate of $26.13
per hour applicable to Apprentice Carpenters (Powers Decl. Ex. A
at 31) and obtained a product of $124,613.97, representing  the
contributions owed to the Funds for Apprentice Carpenters (Ozard
Decl. Ex. C at 6).

24.   The unpaid contributions for Journeymen and
Apprentice Carpenters total $809,679.57.

25.   Pursuant to the CBA, the Funds were also entitled
to recover interest on the unpaid contributions at Citibank's
prime rate plus 2% (Powers Decl. Ex. A Art. XV, § 6).  The unpaid

interest through October 9, 2014 totals $67,136.86 (Ozard. Decl.
Ex. C at 2).

26.   Pursuant to the CBA, the Funds are also entitled
to liquidated damages which are defined as the greater of the
amount of interest owed or 20% of the unpaid contributions
(Powers Decl. Ex. A Art. XV, § 6).   20% of $809,679.57 is
$161,935.91.

27.   The CBA also required Dependable to make contribu-
tions to the Apprenticeship, Journeyman Retraining, Educational
and Industry Promotional Fund at the rate of $0.08 per hour (see
Powers Decl. Ex. A Art. XVIII).   Multiplying the total hours
worked by Journeymen and Apprentice Carpenters (22,389 hours) by
$0.08 per hour yields a product of $1,791.12.

28.   Pursuant to the terms of the CBA, the Funds
submitted their dispute with Dependable to arbitration (Powers
Decl. ¶ 12).

29.   The Arbitrator, Roger Maher issued a Notice of
Hearing dated August 20, 2014, scheduling an arbitration hearing
for October 9, 2014.   The hearing was held as scheduled (Powers
Decl. ¶ 13 & ex. D thereto at 1).

30.   Dependable did not appear at the arbitration nor
did it request an adjournment or extension of time to appear
(Powers Decl. Ex. D at 2).

13

31.   After noting Dependable's default, the arbitrator awarded plaintiffs a total of $1,042,843.46, comprised of the following:

| | |
|---|---|
| Unpaid Estimated Principal | $ 809,679.57 |
| Interest | $  67,136.86 |
| Liquidated Damages | $ 161,935.91 |
| Promotional Fund | $   1,791.12 |
| Court Costs | $     400.00[1] |
| Attorney's Fee | $   1,500.00 |
| Arbitrator's Fee | $     500.00 |
| **TOTAL** | **$1,042,943.46** |

The arbitrator also awarded interest at the rate of 5.25% from October 28, 2014 forward (Powers Decl. Ex. D at 3).

32.   Plaintiffs commenced this action on December 2, 2014 and served the summons and complaint on Dependable on December 6, 2014 (Declaration of Michael Isaac, Esq. dated June 16, 2015 (D.I. 21) ("Isaac Decl.") ¶¶ 2-3 & Exs. E & F thereto).

33.   Dependable has never answered or moved with respect to the complaint and the Clerk of the Court issued a certificate of default on March 4, 2015 (Isaac Decl. Ex. G).

34.   The following attorneys have worked on this matter on behalf of plaintiffs:

---

[1]It is not clear what "Court Costs" were associated with the arbitration.  I presume the arbitrator was anticipating the fee to file this action to enforce his award.  Because the filing fee for this action was included in the arbitrator's award, it should not be awarded as a taxable cost here.

<u>Michael Isaac</u> -- Mr. Isaac is an associate at Virginia and Ambinder, LLP ("V&A") and a 2007 graduate of Rutgers University School of Law.  Mr. Isaac regularly represents multiemployer employee benefit plans in ERISA litigation.  Plaintiffs seek to be compensated for Mr. Isaac's time at the rate of $225.00 per hour (Isaac Decl. ¶ 9).

<u>Nicole Marimon</u> -- Ms. Marimon is an associate at V&A and a 2014 graduate of Fordham University School of Law.  Plaintiffs seek to be compensated for Ms. Marimon's time at the rate of $225.00 per hour (Isaac Decl ¶ 10).

<u>Adam Biggs</u> -- Mr. Biggs is an associate at V&A and a 2011 graduate of Creighton University School of Law. Plaintiffs seek to be compensated for Mr. Biggs' time at the rate of $225.00 per hour (Isaac Decl. ¶ 11).

<u>Marc Tenenbaum</u> -- Mr. Tenenbaum is a partner at V&A and a 1984 graduate of Ohio State University School of Law. Plaintiffs seek to be compensated for Mr. Tenenbaum's time at the rate of $300.00 per hour (Isaac Decl. ¶ 12).

35.  Plaintiffs have submitted contemporaneous time records which indicate that the foregoing attorneys worked on this matter for the number of hours indicated:

| Attorney | Hours | Rate | Fee Requested |
|----------|-------|------|---------------|
| Isaac | 1.3 | 225.00 | 292.50 |
| Marimon | 2.5 | 225.00 | 562.50 |
| Biggs | 32.0 | 225.00 | 7,200.00 |
| Tenenbaum | 0.2 | 300.00 | 60.00 |
| **TOTAL** | | | **8,115.00** |

15

Plaintiffs also seek $525.46 in costs representing the filing fee, service fee, postage and courier services, PACER fees and the fees incurred for computer assisted legal research (Isaac Decl. ¶¶ 8, 16 & Ex. J thereto).[2]

## III.   Conclusions of Law

36.   The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 29 U.S.C. § 185 and 1132.

37.   Venue is proper in this District pursuant to 29 U.S.C. § 1132 because the Funds are administered in this District.

38.   Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."

29 U.S.C. § 1145.

39.   In order to establish their claim under Section 515, plaintiffs must prove two elements:  (1) that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the Funds and (2) that

---

[2]Plaintiffs' time records also contain entries for "EC," "LF" and "MN" and seek rates of $100 per hour.  Although I can guess that these individuals are paralegals, I cannot recommend granting summary judgment on the basis of a guess.

defendant failed to make such contributions.  See <u>Flanagan v. N.
Star Concrete Const., Inc.</u>, No. 13-CV-2300 (JS)(AKT), 2014 WL
4954615 at *7 (E.D.N.Y. Oct. 2, 2014); <u>Sciascia v. Prime Protec-
tive Servs., Inc.</u>, No. 13-CV-0800 (ADS)(AKT), 2014 WL 940721 at
*6 (E.D.N.Y. Mar. 11, 2014); <u>Del Turco v. Taylor Tile Co.</u>, No.
03-CV-5543 (RJD)(JMA), 2007 WL 2581882 at *2 (E.D.N.Y. Aug. 6,
2007) (Report & Recommendation).

     40.  The uncontroverted evidence establishes that
Dependable executed a CBA with the Union on March 15, 2011
(Powers Decl. ¶ 8 & Ex. A thereto).

     41.  The uncontroverted evidence further establishes
that the CBA required Dependable to make specified contributions
to the Funds based on the number of hours workers spent perform-
ing work within the trade and geographical jurisdiction of the
Union (Powers Decl. ¶ 9 and Ex. A thereto at Art XV, § 1).

     42.  The uncontroverted evidence further establishes
that Dependable breached the CBA by refusing to furnish its books
and records to the Funds for the purpose of conducting an audit
(Ozard Decl. ¶ 6; Powers Decl. ¶ 11).

     43.  ERISA Section 502 provides that:

    In any action under this subchapter by a fiduciary for
    or on behalf of a plan to enforce section 1145 of this
    title in which a judgment in favor of the plan is
    awarded, the court shall award the plan --

>    (A) the unpaid contributions,
>
>    (B) interest on the unpaid contributions,
>
>    (C) an amount equal to the greater of --
>
>        (i) interest on the unpaid contributions, or
>
>        (ii) liquidated damages provided for under
>        the plan in an amount not in excess of 20
>        percent (or such higher percentage as may be
>        permitted under Federal or State law) of the
>        amount determined by the court under subpara-
>        graph (A),
>
>    (D) reasonable attorney's fees and costs of the
>    action, to be paid by the defendant, and
>
>    (E) such other legal or equitable relief as the
>    court deems appropriate.

29 U.S.C. § 1132(g)(2); see LaBarbera v. Clestra Hauserman, Inc., 369 F.3d 224, 226 (2d Cir. 2004); Sullivan v. Marble Unique Corp., No. 10 CV 3582 (NGG)(LB), 2011 WL 5401987 at *4 (E.D.N.Y. Aug. 30, 2011) (Report & Recommendation), adopted at, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011).

44.   Because the facts set forth in the preceding section demonstrate that plaintiffs are entitled to recover the amounts the arbitrator awarded under both the terms of the CBA and ERISA, I respectfully recommend that summary judgment be granted to plaintiffs affirming the arbitrator's award in the amount of $1,042,943.46 with interest at the rate of 5.25% from October 28, 2014 forward (Powers Decl. Ex. D at 3).

18

45.   Pursuant to the CBA and ERISA, plaintiffs are also entitled to recover the reasonable attorneys' fees they incurred in bringing this action.

46.   Whether an attorneys' fee award is reasonable is within the discretion of the court.  Melgadejo v. S & D Fruits & Vegetables Inc., 12 Civ. 6852 (RA)(HBP), 2015 WL 10353140 at *23 (S.D.N.Y. Oct. 23, 2015) (Pitman, M.J.) (Report & Recommendation), adopted at, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016) (Abrams, D.J.) (citation omitted).

47.   The party seeking fees bears the burden of establishing that the hourly rates and number of hours for which compensation is sought are reasonable.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); accord Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994).

48.   In determining the amount of reasonable attorneys' fees, "[b]oth [the Second Circuit] and the Supreme Court have held that the lodestar -- the product of a reasonable hourly rate and the reasonable number of hours required by the case -- creates a 'presumptively reasonable fee.'"  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011), quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008).

19

49.   The hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 184.  This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). "[C]ourts should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, supra, 522 F.3d at 192, quoting In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987).  In so doing, the court is free to rely on its own familiarity with the prevailing rates in the district. See Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

50.   Plaintiffs seek a fee award based on hourly rates ranging from $225 per hour for associates to $300 per hour for the one partner who worked on this matter.  "In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." Watkins v. Smith, 12 Civ. 4635 (DLC), 2015 WL 476867 at *3 (S.D.N.Y. Feb. 5, 2015) (Cote, D.J.) (collecting cases); see also

20

Melgadejo v. S & D Fruits & Vegetables Inc., supra, 2015 WL
10353140 at *24 (recommending $275 hourly rate for attorneys with
at least five years of litigation experience); Collado v.
Donnycarney Rest. L.L.C., 14 Civ. 3899 (GBD)(HBP), 2015 WL
4737917 at *11, *14 (S.D.N.Y. Aug. 10, 2015) (Daniels, D.J.)
(same); Alvarez v. 215 N. Ave. Corp., 13 Civ. 7049 (NSR)(PED),
2015 WL 3855285 at *8 (S.D.N.Y. June 19, 2015) (Román, D.J.)
(same).  Thus, the hourly rates sought by plaintiffs are reason-
able.

     51.  The Honorable Loretta A. Preska, United States
District Judge, has summarized the factors to be considered in
assessing the reasonableness of the hours claimed in a fee
application:

>     To assess the reasonableness of the time expended
> by an attorney, the court must look first to the time
> and work as they are documented by the attorney's
> records.  See Forschner Group, Inc. v. Arrow Trading
> Co., Inc., No. 92 Civ. 6953 (LAP), 1998 WL 879710, at
> *2 (S.D.N.Y. Dec. 15, 1998).  Next the court looks to
> "its own familiarity with the case and its experience
> generally . . . .  Because attorneys' fees are depend-
> ent on the unique facts of each case, the resolution of
> the issue is committed to the discretion of the dis-
> trict court."  AFP Imaging Corp. v. Phillips Medizin
> Sys., No. 92 Civ. 6211 (LMM), 1994 WL 698322, at *1
> (S.D.N.Y. Dec. 13, 1994) (quoting Clarke v. Frank, 960
> F.2d 1146, 1153 (2d Cir. 1992) (quoting DiFilippo v.
> Morizio, 759 F.2d 231, 236 (2d Cir. 1985))).
>
>         *     *     *
>
>     Finally, billing judgment must be factored into
> the equation.  Hensley, 461 U.S. at 434; DiFilippo, 759

F.2d at 235-36.  If a court finds that the fee appli-
cant's claim is excessive, or that time spent was
wasteful or duplicative, it may decrease or disallow
certain hours or, where the application for fees is
voluminous, order an across-the-board percentage reduc-
tion in compensable hours.  In re "Agent Orange" Prod-
ucts Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987)
(stating that "in cases in which substantial numbers of
voluminous fee petitions are filed, the district court
has the authority to make across-the-board percentage
cuts in hours 'as a practical means of trimming fat
from a fee application'" (quoting Carey, 711 F.2d at
1146)); see also United States Football League v.
National Football League, 887 F.2d 408, 415 (2d Cir.
1989) (approving a percentage reduction of total fee
award to account for vagueness in documentation of
certain time entries).

Santa Fe Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00

Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002)

(Preska, D.J.); accord Hensley v. Eckerhart, supra, 461 U.S. at

434.

52.  Plaintiffs seek compensation for a total of 36

hours of attorney time, which includes drafting the summons and

complaint, moving for a default judgment, attending one court

conference and preparing the papers in support of the inquest.

Based on my experience as an attorney and a magistrate judge, I

conclude that the number of hours for which compensation is

sought is commensurate with the work done on this case and that

no adjustment is necessary.

53.  Accordingly, I recommend that plaintiffs be

awarded $8,115.00 in attorneys' fees.

54.  Plaintiffs also seek $525.46 in costs, comprised of the filing fee for this action, postage and courier fees, the service fee and the fee for computerized legal research.

55.  Fee awards "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citation omitted).  Accordingly, courts, in their discretion, have awarded reasonable costs for various expenses, including computer research, attorney transportation and meals, mailing and copying fees and service and filing fees.  See, e.g., Kim v. Kum Gang, Inc., 12 Civ. 6344 (MHD), 2015 WL 3536593 at *7 (S.D.N.Y. June 5, 2015) (Dolinger, M.J.); Rosendo v. Everbrighten Inc., 13 Civ. 7256 (JGK)(FM), 2015 WL 1600057 at *9 (S.D.N.Y. Apr. 7, 2015) (Maas, M.J.) (Report & Recommendation), adopted at, 2015 WL 4557147 (S.D.N.Y. July 28, 2015) (Koeltl, D.J.); Reiseck v. Universal Commc'ns of Miami, Inc., 06 Civ. 777 (LGS)(JCF), 2014 WL 5374684 at *8 (Sept. 5, 2014) (Francis, M.J.) (Report & Recommendation), adopted at, 2014 WL 5364081 (S.D.N.Y. Oct. 22, 2014) (Schofield, D.J.).

56.  I have reviewed the costs sought by plaintiffs and, with one exception, conclude that they are reasonable.  The one exception is the $400 filing fee charged to commence the

23

present action.  As noted above, it appears that the arbitrator
included the $400 filing fee for this action in his award.
Accordingly, the costs awarded should be limited to $125.46.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I respect-
fully recommend that (1) judgment be entered in favor of plain-
tiffs in the amount of $1,042,943.46 with interest at the rate of
5.25% from October 28, 2014 to the present; (2) plaintiffs be
awarded attorneys' fees in the amount of $8,115.00 and (3) that
plaintiffs be awarded costs in the amount of $125.46.

V.  OBJECTIONS

        Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
John G. Koeltl, United States District Judge, 500 Pearl Street,
Room 1030, New York, New York  10007 and to the Chambers of the
undersigned, 500 Pearl Street, Room 1670, New York, New York
10007.  Any requests for an extension of time for filing objec-

24

tions must be directed to Judge Koeltl.   FAILURE TO OBJECT WITHIN

FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL**

PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140, 155

(1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir.

1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054

(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)

(per curiam).

Dated:   New York, New York
         March 9, 2017

                                        Respectfully submitted,


                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies transmitted to:

Charles R. Virginia, Esq.
Michael H. Isaac, Esq.
Adam A. Biggs, Esq.
Todd Dickerson, Esq.
Virginia & Ambinder, LLP
7th Floor
40 Broad Street
New York, New York   10004

Dependable Office Installation LLC
55 Elm Hill Road
Clifton, New Jersey 07055